USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/12/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
AVIONS DE TRANSPORT RÉGIONAL G.I.E.,

                           Plaintiff,

-against-

AVIAN LÍNEAS AÉREAS S.A. and SYNERGY
AEROSPACE CORP.,

                           Defendants.
------------------------------------------------------------- X

**ORDER DENYING MOTION TO VACATE ENTRY OF DEFAULT AND ENTERING DEFAULT JUDGMENT**

19 Civ. 6769 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

On July 22, 2019, Plaintiff Avions De Transport Régional G.I.E. ("ATR") commenced this suit against Defendants Avian Líneas Aéreas S.A. ("Avian") and Avian's parent company, Synergy Aerospace Corp. ("Synergy"), to recover money allegedly owed under two promissory notes. *See* ECF No. 7. Defendants did not respond. On September 11, the Clerk of Court entered a Certificate of Default. *See* ECF No. 17. On October 4, Plaintiff filed a proposed default judgment. *See* ECF No. 26. On October 7, Defendants moved—the focus of this order— to set aside the Clerk's entry of default. *See* ECF No. 27. In light of Defendants' motion, I deferred decision on the proposed default judgment. Now, after reviewing the parties' positions, I deny the motion to vacate the entry of default and enter default judgment in Plaintiff's favor.

## Background

A. The Complaint

The facts in this section are taken from the Complaint. In late 2016, ATR and Avian entered into a contract, pursuant to which Avian agreed to buy several aircraft from ATR for around $18.5 million per plane. *See* Compl., ECF No. 7, at ¶¶ 8-9. The contract required Avian to make payments in advance of the delivery of each aircraft. *See id.* at ¶ 9. Avian later ran into liquidity issues and failed to make certain owed payments to ATR. *See id.* at ¶¶ 17-22.

Thereafter, ATR and Defendants began negotiating to resolve the issue of Avian's nonpayment. *See id.* at ¶ 23. As a product of these negotiations, ATR agreed to accept from Defendants a promissory note for $5,000,000 (the "March Note"), to be paid on or before April 12, 2017. *See id.* at ¶¶ 24-25; ECF No. 7-3. In April 2017, the March Note was amended to extend the pay-by due date to May 31, 2017—Defendants failed to pay by this date. *See* Compl., at ¶¶ 29-30; ECF No. 7-4. On September 4, 2017, the March Note was again amended, this time extending the payment deadline to September 30, 2017, and increasing the amount owed to $9,815,545. *See* Compl. at ¶ 33; ECF No. 7-5. Around this time, Defendants issued a separate promissory note agreeing to pay an additional $3,862,114 to ATR by September 30, 2017 (the "September Note"). *See* Compl., at ¶ 34; ECF No. 7-6.

Both the March and September Notes contain the following provision:

> Each of the [Defendants] hereby irrevocably and unconditionally submits to the non-exclusive jurisdiction of any New York State court or Federal court of the United States sitting in New York County in any action or proceeding arising out of or relating to this Promissory Note or for recognition or enforcement of any judgment, and each of the [Defendants] hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State Court or, to the extent permitted by law, in such Federal Court.

ECF Nos. 7-5, 7-6.

Defendants did not make any payments to ATR by the September 30, 2017 deadline. *See* Compl., at ¶¶ 37-38.

B. The Default

The Complaint was filed on July 22, 2019, to recover $13,677,650, plus interest, *i.e.*, the approximate combined amount owed under the March and September Notes. *See* ECF Nos. 7, 9, 10. Defendants confirm that service was made on July 23. *See* ECF No. 27, at ¶¶ 6-7. Defendants represent that around this time, on July 22, 2019, a "Concurso Preventivo" was "filed

2

on Avian in Buenos Aires," an action "similar to a Chapter 11 restructuring in U.S. Bankruptcy Law." ECF No. 27, at ¶ 4.

On August 12, Plaintiff submitted a letter to the Court, which forwarded an email from Synergy's in-house counsel stating that Defendants had not yet secured counsel and would like a 20-day extension to file a response. *See* ECF No. 13-1. The Court granted this request by proxy, extending the deadline to respond to the Complaint from August 13 to September 3. *See* ECF No. 14. On August 23, Defendants were emailed a letter from the International Chamber of Commerce ("ICC") stating that Plaintiff had served upon them a request for arbitration in regard to the same or similar matters at issue in this action. *See* ECF No. 27-1. The September 3, 2019 deadline for an answer passed without any response from Defendants.

On September 4, Mr. Gilbert K. Squires, emailed Plaintiff to state that he had been retained as Defendants' counsel in both the instant action and the ICC arbitration. *See* ECF No. 27-2. Squires acknowledged in his message that "a response was due today, September 4, 2019," and asked Plaintiff's counsel to set a time to "discuss a path forward in the two cases." *Id.* On September 5, Squires and Plaintiff's counsel spoke by telephone, during which time the latter agreed to wait until September 9, 2019 before seeking a default judgment. *See* ECF No. 29, at ¶ 8; ECF No. 27, at ¶ 13.

On September 8, Squires emailed Plaintiff's counsel, stating in relevant part:

I am experiencing an excruciatingly painful sciatica flare-up. . . .

[I]n bed for two days. I will have additional medical treatment tomorrow. Please, G-d, I expect to be up to speed in two or three days.

It is impossible to sit. I met my principal client Friday [September 6] . . . . He noticed my painful grimaces. We desire to move towards a resolution in the matters at hand. I still need to file appearances and responses, and will. . . .

I will be a bit delayed filing my appearances.

3

ECF No. 30-2. The next day, September 9, Plaintiff's counsel responded:

> We are of course sorry to hear of your medical difficulties. However, the complaint in this matter was served on Defendants on July 23, 2019, with an answer or other responsive pleading due August 13, 2019. At [Synergy's] request, we granted a 22 day extension to September 3, 2019. As a professional courtesy, we moved the court for the extension of time. Following this, we granted an additional week [] based on your pending appearance and our understanding that an answer or responsive pleading would be filed by the close of business today, September 9, 2019.
>
> [W]e will again extend Defendants' time to answer or otherwise move the court to our close of business tomorrow[, September 10]. . . .

*Id.* Later that day, Squires responded saying he "expect[ed] to get on the SDNY appearance tomorrow," that is, September 10. *Id.*

Also on September 9, Squires submitted a letter to the ICC, copying Plaintiff, in which he asked the ICC for "additional time to analyze evaluate [sic] the issues" before filing a response to Plaintiff's arbitration demand. ECF No. 27-3. In this letter, Squires explained:

> Because I have just gotten on the case, I need to acquaint myself with the issues facing my clients fully. Also, this past Thursday night, I became unexpectedly ill with a horrible sciatica flareup, which is excruciatingly painful and prevents me from sitting or walking without pain. I'm currently under medical and chiropractic care. Notwithstanding, I have been diligently working on getting up to speed on all cases.

*Id.*

Defendants did not file an answer or other responsive pleading by September 10. On September 11, on Plaintiff's motion, the Clerk entered a certificate of default. *See* ECF Nos. 16, 17. On September 12, Plaintiff filed a proposed default judgment. *See* ECF No. 18. On

4

September 25, Defendants were mailed Plaintiff's proposed default judgment; the proposed defaults were also docketed. *See* ECF Nos. 21, 22; *see also* ECF No. 27, at ¶¶ 26, 33.[1]

On October 2, 2019, Squires, filed his first appearance. *See* ECF No. 23. On October 4, Squires sent a letter to the Court requesting to appear by phone at a status conference scheduled for 10:00 a.m. that same day. *See* ECF No. 25. That conference had been scheduled since July 29, 2019.[2] *See* ECF No. 11. Mr. Squires's letter explained:

> I write this letter on an airplane from Philadelphia to Miami, after serving as sole arbitrator on an emergency arbitration at the AAA's offices in Philadelphia. As the 103rd President of the Miami-Dade County Bar Association, I am required to attend and speak at the investiture of Judges in the 11th Judicial Circuit in and for Miami-Dade County, Florida, and Florida's Third District Court of Appeal. Well before coming on to the referenced case, I was set to keynote at the Appellate Investiture of the Honorable Fleur Lobree into the Third District Court of Appeal, which is on October 4. Although the emergency arbitration in Philadelphia ended earlier today with a consent award, it would have been physically impossible for me to attend the Case Management conference tomorrow in New York and be in Miami on time for Judge Lobree's Investiture. . . .
>
> In the recent three weeks, I was ill and unable to work at my full capacity. Moreover, I was only able to file my *Pro Hac Vice* Motion until October 1, 2019 . . . . As the motion shows, it contained my Certificates of Good Standing from Florida, the District of Columbia and New York. Except for the District of Columbia Court of Appeals, which provides the Certificate of Good Standing within a day through online ordering and delivery, it took at least three days to respectively obtain the Certificates of Good Standing from the Florida Supreme Court and the State of New York's Supreme Court, Appellate Division Third Judicial Department.

---

[1] Defendants claim the proposed default judgment could not be delivered to Avian, because "Avian's address in the DHL mail had a typo," ECF No. 27, at 12, and that the misdelivery violates Local Rule 55.2. This claim is puzzling, given that Defendants admit Synergy, Avian's parent, received the default documents by October 2, 2019, *see id.* at ¶ 33, that the mail record shows that Synergy repeatedly attempted to *refuse* the delivery of the relevant items, *see* ECF No. 22-1, that Squires is the attorney for both Defendants, and that the relevant documents were available on the docket (to which Squires had access, *see* ECF No. 27-2). This claim is also hard to square with the statement in Defendants' brief that Squires "asked Synergy's in-house counsel to send a scanned copy of all the pages of the document," but "[i]nstead, [Squires received] only a picture of one page titled 'Affirmation in Support of Clerk's Default.'" ECF No. 27, at ¶ 34. In any case, Squires does not contend that this purported misdelivery prejudiced his ability to prepare this motion. Thus, his suggestion, made without reference to case law, that a supposed Rule 55.2 violation warrants wholesale rejection of Plaintiff's proposed default is meritless, and not considered further below.

[2] In his September 5 letter to Plaintiff's counsel, Squires indicated his awareness of the October 4 conference: "The Court rendered a Notice of Court Conference for October 4, 2019 at 10:00 a.m." ECF No. 27-2.

ECF No. 25, at 1-2. The October 4 status conference proceeded as scheduled—given the late notice of Mr. Squires, there was no time to accommodate a phone appearance—with Plaintiff's counsel. That same day, Plaintiff moved for a judgment of default. *See* ECF No. 26. And a few days after that, on October 7, Defendants filed the instant motion to set aside the Clerk's entry of default. *See* ECF No. 27.

**Discussion**

"The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Because Rule 55(c) does not define the term 'good cause,' the Second Circuit has established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment." *Bricklayers and Allied Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quotation marks and alterations omitted). The criteria are: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Id.* (quotation marks omitted). I find that these factors, taken together, do not warrant setting aside the default.

A. Willfulness

The Second Circuit has "interpreted 'willfulness,' in the context of default, to refer to conduct that is more than merely negligent or careless," but is instead 'egregious and . . . not satisfactorily explained.'" *Bricklayers*, 779 F.3d at 186 (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cit. 1998)). "[B]ad faith is not a necessary predicate to concluding that a defendant acted willfully. Rather, it is sufficient to conclude that the defendant defaulted deliberately." *Bricklayers*, 779 F.3d at 187 (quotation marks and alterations omitted); *see Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (where defendant "d[id] not deny that he received the complaint" or "the notice of default judgment" or that "he never answered the

complaint," these factors "support an inference of willful default"); *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) ("[D]efaults resulting from deliberate conduct . . . are not excusable.").

Defendants' default was willful. Defendants concede they were served with the Complaint on July 23. From there, Defendants' conduct, such as requesting, via Plaintiff, an extension of time to reply and the last-minute request to appear telephonically at a conference, makes clear that Defendants were well aware of this suit and their need to respond. Indeed, in one email, Squires stated: "I understand . . . a response was due today, September 4." ECF No. 27-2. *See Bricklayers*, 779 F.3d at 186 ("[T]here is no dispute that [the defendant] was aware of the legal action pending against him and his company based on his own admissions and the fact that the corporate defendant requested . . . an extension of time to respond."). Plaintiff extended, as a courtesy, later extensions to September 9 and then September 10, and along the way Squires acknowledged these extensions and promised that a response would be forthcoming, when, in fact, no response would ever come.

Defendants contend that they "acted in good faith," ECF No. 27, at 10, but the question is not whether there was bad faith, but whether the failure to respond was deliberate, *see Bricklayers*, 779 F.3d at 187. Defendants' communications reflect a "clear pattern of willful and deliberate disregard for the litigation." *Id.* Defendants suggest that Squires's sciatica prevented him from all action during the period of September 5-9, *see* ECF No. 27, at 10, but Defendants had since July 22 to obtain counsel, and, in any event, Defendants' own brief describes Squires actively negotiating with Plaintiff during this same timeframe, *see id.* at ¶¶ 13-15, undercutting any possibility that Squires was so incapacitated as to justify the failure of Defendants to appear or respond until about a month after a post-extension response was due. Indeed, Squires, in a

7

September 9 letter to the ICC stated that despite his sciatica, he was "diligently working" on reviewing the case materials. ECF No. 27-3.

Squires's letter to the Court on the day of the October 4 status conference—sent before the filing of any response or request for extension—strongly suggests that he was simply overbooked with other duties (such being a "keynote" speaker), and was at the least feeling well enough for plane travel from Philadelphia to Miami.[3] In short, the default was deliberate.

B. <u>Existence of any meritorious defenses</u>

A party opposing default must offer more than "conclusory assertions" to support a defense and justify vacatur of an entry of default. *Bricklayers*, 779 F.3d at 187. The party opposing default must, at the least, "establish . . . the rudimentary elements of a meritorious defense," that is, must present proof to "show the existence of a meritorious defense." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004). "The test . . . is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3 167, 173 (2d Cir. 2001) (quotation marks omitted).

Defendants do not challenge the validity of the March or September Notes, or contend that these documents can be interpreted so as not to require Defendants to pay Plaintiff. Instead, Defendants' argument, quoted in full below, is:

> Defendants, in addition to intervening circumstances, will argue that the parties entered into a valid arbitration agreement, that the facts underlying the Complaint relate and are part to the facts [sic] that support the Request for Arbitration that Plaintiff/Claimant filed with the International Court of Arbitration of the ICC.

---

[3] For this same reason, I find that any neglect on the part of Defendants was not "excusable" within the meaning of Fed. R. Civ. P. 60(b). *See, e.g., Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 251 (2d Cir. 1997) ("Where . . . the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose . . .").

8

> Therefore the Court should stay these proceedings pending resolution in Arbitration or in the alternative Plaintiff's claims should be dismissed.

ECF No. 27, at 11. What are these "intervening circumstances"? Defendants do not explain. And as to the claim that the parties entered a "valid arbitration agreement," Defendants have failed to provide any evidence that such an agreement exists, much less that such an agreement requires staying these proceedings. Defendants have not adduced any agreement, have not quoted any language from any agreement, have not contended that any agreement purports to rob this Court of its jurisdiction, and have not even provided to the Court a sworn statement attesting to the existence of any agreement. What's more, after Plaintiff noted in its opposition brief Defendants' failure to produce or describe any agreement, *see* ECF No. 29, at 7, Defendants failed again in their reply to produce or describe the agreement, *see* ECF No. 31, at 11 (stating only that "Defendants will show the Court that these proceedings should be stayed for lack of jurisdiction pending a jurisdictional decision in the arbitral tribunal").

Defendants' thin pleadings are not enough. Even if Defendant were at trial to demonstrate the existence of an arbitration agreement, that would not be enough, without more, to counteract the clear language in the March and September Notes providing that jurisdiction is proper in this Court. *See* ECF No. 7-5 (Defendants "irrevocably and unconditionally submit[] . . . to the non-exclusive jurisdiction of any New York State court or Federal court . . . sitting in New York County"); ECF No. 7-6 (same). Defendants have failed to make even a rudimentary showing of evidence that could amount to a complete defense at trial.

C. Prejudice to the Plaintiff

As to prejudice, "the district court must consider the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy . . . resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for

9

fraud and collusion." *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (quotation marks and alterations omitted).

Having concluded that Defendants willfully defaulted and lack a meritorious defense, I need not reach the question of whether the Plaintiff would be prejudiced by vacatur of the default. *See Bricklayers*, 779 F.3d at 187. Nonetheless, I note that the record suggests that Plaintiff would be prejudiced. Defendants' brief acknowledges, more than once, their precarious financial position, drawing into question whether Plaintiff will be able to recover if it is delayed further. For example, Defendants state that in July 2019, there was a "Concurso Preventivo . . . filed on Avian," a proceeding "similar to a Chapter 11 restructuring in U.S. Bankruptcy Law." ECF No. 27, at ¶ 4; *see id.* at 11 (referring to their "financial difficulties"). The possibility that Plaintiff's recovery could be "thwart[ed]" by Defendants' inability to pay further supports denying Defendants' motion to vacate the entry of default, *Swarna*, 622 F.3d at 142

D. Entry of Default

It is "an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quotation marks omitted). For the reasons explained above, I reject Defendants' motion to set aside the entry of default, and, accordingly, I now look to the well-pleaded factual allegations. The March and September Notes plainly state that Defendants jointly and severally promise to pay to Plaintiff $3,862,114 and $9,815,545, respectively, on or before September 30, 2017. *See* ECF Nos. 7-5, 7-6. Thus, default judgment as proposed by Plaintiff is proper, and I so order it.

## Conclusion

For the reasons stated, Defendants' motion to set aside the entry of default is denied. Conversely, I order Plaintiff's proposed judgment of default. The Defendants shall pay to Plaintiff $13,677,650, plus 9% interest per annum from September 30, 2017, amounting to $16,075,572.51, plus costs and disbursements in the amount of $740.50, amounting to a total of $16,076,313.01. The Clerk shall terminate the open motion (ECF No. 27) and close the case.

SO ORDERED.

Dated: November /2, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge